**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SOL DE LA ROSA GUARIN,<br><br>                                    Petitioner,<br><br>v.<br><br>CHRISTOPHER J. LAROSE, et al.,<br><br>                                    Respondents. | Case No.:  25-cv-03085-DMS-VET<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER** |

On November 10, 2025, Petitioner filed a Petition for Writ of Habeas Corpus ("Petition") and a Motion for Temporary Restraining Order ("Motion"). (Pet., ECF No. 1; Mot., ECF No. 2). Respondents filed a response in opposition and Petitioner filed a reply. (Opp'n, ECF No. 7; Reply, ECF No. 8). For the following reasons, the Court grants in part and denies in part the Motion.

**I.     BACKGROUND**

Petitioner was born in Spain to a Christian, Roma family. (Pet. ¶ 20). Petitioner and his family eventually fled to Mexico due to religious persecution, as well as violence against Petitioner for being bisexual. (*Id.*). Petitioner obtained permanent residence in Mexico, working as an addiction counselor at a drug rehabilitation clinic. (*Id.* ¶¶ 20–21). One of Petitioner's clients learned of his Spanish passport and asked him to transport drugs

| | |
|---|---|
| 1 | internationally. (*Id.* ¶ 21). When Petitioner refused, he was kidnapped and beaten by |
| 2 | members of the Sinaloa Cartel. (*Id.*; Mot. Ex. A at ¶¶ 5–6). After Petitioner was let go, he |
| 3 | spent weeks in the hospital and asked his half-brother, a U.S. citizen, to help him apply to |
| 4 | enter the United States through the Visa Waiver Program ("VWP"). (Mot. Ex. A at ¶¶ 6– |
| 5 | 7). While in the hospital, Petitioner learned of several break-ins to his home by his |
| 6 | kidnappers. (*Id.* ¶ 8). After being released from the hospital, Petitioner immediately went |
| 7 | to the U.S. border and arrived at the San Ysidro Port of Entry East Pedestrian Lane on |
| 8 | July 9, 2024. (*Id.* ¶ 9; Pet. ¶ 22). Petitioner was arrested and has been detained by |
| 9 | Immigration and Customs Enforcement ("ICE") at the Otay Mesa Detention Center ever |
| 10 | since. (Pet. ¶ 22). On November 11, 2024, Petitioner requested a custody redetermination, |
| 11 | but the Immigration Judge ("IJ") declined jurisdiction due to Petitioner's status as a VWP |
| 12 | applicant. (Pet. ¶ 24; Mot. Ex. B at 5–6); *see Matter of A-W-*, 25 I. & N. Dec. 45, 47 |
| 13 | (holding that an IJ's jurisdiction over a VWP applicant is "expressly limited to a |
| 14 | determination whether the applicant is eligible for asylum or withholding of removal"). |
| 15 | On May 22, 2025, an IJ granted Petitioner Withholding of Removal ("WOR") from Spain |
| 16 | and Mexico, which neither party appealed. (Pet. ¶ 25). On August 26, 2025, counsel for |
| 17 | Petitioner contacted ICE to notify them that Petitioner had not received his ninety-day |
| 18 | custody review by August 20, 2025, as required by 8 C.F.R. 241.4. (Mot. Ex. B at 15). |
| 19 | Petitioner also had not received a thirty-day written notice as required, which would have |
| 20 | indicated that a custody review was imminent. (*Id.*). Over the next five weeks, counsel |
| 21 | for Petitioner repeatedly contacted ICE about the overdue custody review. (Pet. ¶¶ 26–29). |
| 22 | Petitioner alleges that on October 3, 2025, ICE officers approached him at the Otay Mesa |
| 23 | Detention Center and pressured him to sign a backdated document indicating he received |
| 24 | notice of an August custody review on June 9, 2025. (Pet. ¶ 30; Mot. Ex. B at 28–31). |
| 25 | Petitioner, a Spanish-speaker, refused to sign the documents without interpretation or |
| 26 | counsel. (Pet. ¶ 30; Mot. Ex. A at ¶ 17). On October 6, 2025, Petitioner alleges that ICE |
| 27 | officers again approached him with new documents which stated that he would receive a |
| 28 | custody review on November 5, 2025, and Petitioner again refused to sign without counsel |

present. (Pet. ¶ 32; Mot. Ex. B at 32–33). On October 15, 2025, Petitioner alleges that ICE officers brought him new documents indicating a custody review had taken place and that there was a decision to continue detention, which Petitioner again refused to sign unless they contacted his attorney. (Pet. ¶¶ 33–34; Mot. Ex. B at 34–35). The decision purports to be based, in part, on documents submitted by Petitioner on June 24, 2025, despite statements from Petitioner and his counsel that they did not submit any documents on that date. (Pet ¶¶ 34–35; Mot. Ex. B at 34–37). To Petitioner's knowledge, no custody review was held on November 5, 2025. (Pet. ¶ 36).

Petitioner alleges that his prolonged detention violates the Fifth Amendment Due Process Clause, the Immigration and Nationality Act, and the Administrative Procedure Act. (Pet. ¶¶ 57–86). Petitioner requests a temporary restraining order or preliminary injunction ordering that (1) Respondents immediately release Petitioner; (2) Respondents not re-detain Petitioner without a hearing before a neutral decisionmaker; and (3) Respondents not remove Petitioner to a third country without notice and a meaningful opportunity to be heard. (Mot. 19).

## II.   LEGAL STANDARD

The legal standard for issuing a TRO is essentially identical to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Zamfir v. Casperlabs, LLC*, 528 F. Supp. 3d 1136, 1142 (S.D. Cal. 2021). "A party seeking a preliminary injunction must meet one of two variants of the same standard." *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017). Under the *Winter* standard, a party is entitled to a preliminary injunction if he demonstrates (1) "that he is likely to succeed on the merits," (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A party "must make a showing on *all four prongs* to obtain a preliminary injunction." *A Woman's Friend Pregnancy Res. Clinic v. Becerra*,

1 | 901 F.3d 1166, 1167 (9th Cir. 2018) (citation modified).

2 |      Under the Ninth Circuit's "serious questions test—a sliding scale variant of the *Winter* test— . . . a party is entitled to a preliminary injunction if [he] demonstrates (1) serious questions going to the merits, (2) a likelihood of irreparable injury, (3) a balance of hardships that tips sharply towards the [petitioner], and (4) the injunction is in the public interest." *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 (9th Cir. 2024) (citation modified). "If a [petitioner] can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the [petitioner's] favor, and the other two *Winter* factors are satisfied." *All. for the Wild Rockies*, 865 F.3d at 1217 (citation modified) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)). A petitioner need only demonstrate success as to at least one of his claims to receive an injunction. *See Ozkay v. Equity Wave Lending, Inc.*, No. 20-cv-08263-JST, 2020 WL 12764953, at *2 (N.D. Cal. Nov. 25, 2020).

     A district court may consider "the parties' pleadings, declarations, affidavits, and exhibits submitted in support of and in opposition to the application." *Cal. Rifle & Pistol Ass'n, Inc. v. L.A. Cnty. Sheriff's Dep't*, 745 F. Supp. 3d 1037, 1048 (C.D. Cal. 2024); *see Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) (finding district court did not abuse its discretion in granting a preliminary injunction when it relied on hearsay evidence and "the many exhibits, affidavits, declarations and factual allegations which have been submitted . . . by all parties . . . throughout the course of this litigation"). Any evidentiary issues "properly go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F. Supp. 3d 1177, 1185 (C.D. Cal. 2015).

     Injunctive relief can be prohibitory or mandatory. "A prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009) (citation modified) (quoting *Chalk v. U.S. Dist. Ct. Cent. Dist. of Cal.*, 840 F.2d 701, 704 (9th Cir. 1988)). "A mandatory injunction orders a

responsible party to take action[,] . . . goes well beyond simply maintaining the status quo pendente lite[,] and is particularly disfavored." *Id.* at 879 (citation modified). The "status quo" refers to the "last, uncontested status" between the parties before the controversy arose. *N.D. ex rel. Parents Acting as Guardians Ad Litem v. Haw. Dep't of Educ.*, 600 F.3d 1104, 1112 n.6 (9th Cir. 2010) (quoting *Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879); *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014). Mandatory injunctions are subject to heightened scrutiny whereas prohibitory injunctions are evaluated under the traditional *Winter* test. *See Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879. "In general, mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'" *Id.* (quoting *Clune v. Publishers' Ass'n of N.Y. City*, 214 F. Supp. 520, 531 (S.D.N.Y. 1963)).

### III.   DISCUSSION

#### A. Injunctive Relief Sought

The Court first considers whether Petitioner seeks prohibitory or mandatory injunctive relief. Ordering Respondents to release Petitioner would be a prohibitory injunction, because Petitioner seeks to preserve the status quo preceding this litigation (being free from federal custody). However, enjoining the Government from removing Petitioner to a third country without court-imposed procedures (requiring notice, an opportunity to be heard, or an opportunity to file a motion to reopen with an IJ) may be mandatory. One might argue that such an order directs the Government to implement procedures it would "not otherwise have held" absent the Court's direction. *See Hernandez v. Sessions*, 872 F.3d 976, 998–99 (9th Cir 2017). On the other hand, the requested TRO may be understood as prohibiting the Government from unlawfully removing Petitioner to a third country. *See id.* at 999. "Because the nature of this provision is subject to greater dispute than the first, we assume without deciding that the [injunction] is mandatory." *Id.*

### B. *Zadvydas* Claim

#### 1. Likelihood of Success / Serious Questions Going to the Merits

Petitioner carries the burden of demonstrating a likelihood of success (or alternatively, showing "serious questions going to the merits"). *See A Woman's Friend Pregnancy Res. Clinic*, 901 F.3d at 1167; *All. for the Wild Rockies*, 865 F.3d at 1217. However, Petitioner is not required to prove his case in full at this stage—only such portions that enable him to obtain the injunctive relief he seeks. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

"[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days" (referred to as the "removal period"). 28 U.S.C. § 1231(a)(1)(A). An alien must be detained during the 90-day removal period. *Id.* § 1231(a)(2). After the removal period, an alien not yet removed may continue to be detained or released under supervision; however, detention beyond the removal period is limited to what is reasonably necessary to bring about the alien's removal. *Id.* § 1231(a)(6); *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). Section 1231 contains an implicit time limitation of six months, after which post-removal detention is no longer presumptively reasonable. *Zadvydas*, 533 U.S. at 701. The petitioner has the initial burden to provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," after which, the Government must respond with evidence sufficient to rebut this showing. *Id.* at 701. If removal is not reasonably foreseeable, the petitioner's detention is no longer authorized by statute. *Id.* at 699–700. "In that case, . . . the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances." *Id.* at 700.

Petitioner's removal period began on May 22, 2025, when he was granted WOR. (Pet ¶ 8; Opp'n 2). As of November 22, 2025, Petitioner has been detained for more than six months, exceeding the presumptively reasonable time limitation established in *Zadvydas*. (Opp'n 2; Reply 1). This triggers the *Zadvydas* burden-shifting scheme. Petitioner has received minimal communications regarding his detention status, including

a late and procedurally incorrect custody review. (Pet. ¶¶ 34–35); *see* 8 C.F.R. 241.4(h)(2) (requiring thirty-day written notice be given to noncitizens so that they "may submit information in writing in support of [their] release"). Petitioner has not been told when a third-country removal might occur and it appears that the Government does not have a third-country removal underway, nor an answer as to when Petitioner will be removed. Accordingly, Petitioner has sufficiently raised a "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

Respondents' efforts do not rebut Petitioner's showing. ICE's Enforcement and Removal Operations has submitted third-country removal requests to three countries, beginning on July 2, 2025. (Opp'n 1; Ramirez Decl., ECF No. 7-1 at ¶ 5). Respondents admit that these requests remain "pending" and that no third country has accepted Petitioner. (Opp'n 1). Respondents assert that "there is a significant likelihood of Petitioner's removal . . . in the reasonably foreseeable future" but provide no supporting evidence beyond the Deportation Officer's experience. (Opp'n 3 (quoting Ramirez Decl. ¶ 12)). On this record, Petitioner has demonstrated a likelihood of success on his *Zadvydas* claim, or at least shown serious questions going to the merits.[1]

## 2. Likelihood of Irreparable Harm

Under the second *Winter* factor, the Court considers whether Petitioner is "likely to suffer irreparable harm in the absence of [injunctive] relief." *Winter*, 555 U.S. at 20. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Fifth Amendment Due Process Clause protects. *Zadvydas*, 533 U.S. at 690. "[T]he deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002

---

[1] In light of this determination, the Court declines to consider Petitioner's arguments that Respondents violated their procedural regulations.

(9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Therefore, the second *Winter* factor favors Petitioner.

### 3. Balance of Equities and Public Interest

When the Government is a party to a case, the third and fourth *Winter* factors—the balance of the equities and the public interest—merge. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). It would not be "in the public's interest to allow the [Government] . . . to violate the requirements of federal law, especially when there are no adequate remedies available." *Ariz. Dream Act Coal.*, 757 F.3d at 1069 (quoting *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013)). "The public interest in enforcement of immigration laws, although significant, does not override the public interest in protecting the safeguards of the Constitution." *Domingo-Ros v. Archambeault*, No. 25-cv-1208-DMS-DEB, 2025 WL 1425558, at *5 (S.D. Cal. May 18, 2025). Accordingly, the third and fourth factors support injunctive relief. A TRO is warranted under the circumstances.

### C. Third-Country Removal Claim

As shown above, Petitioner does not face an immediate threat of third-country removal. Indeed, Petitioner argues that "there is no significant likelihood of removal in the reasonably foreseeable future." (Reply 1). Thus, based on the current record, the Court declines to impose any procedures required for Respondents to effectuate a third-country removal. *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ( "a [petitioner] must demonstrate *immediate* threatened injury as a prerequisite to preliminary injunctive relief" (emphasis added) (citation modified)). Petitioner's request for such injunctive relief is **DENIED**.

### IV. CONCLUSION

Based on the foregoing, the Court: (1) **GRANTS** Petitioner's request to be released from custody; and (2) **DENIES** Petitioner's request to implement procedures before Respondents can effectuate a third-country removal.

|   |   |
|---|---|
| 1 | This Court hereby **ORDERS** Respondents to release Petitioner from custody within |
| 2 | 48 hours of this Order's filing with reasonable conditions of supervised release. The Parties |
| 3 | are **ORDERED** to file a Joint Status Report within 72 hours of this Order's filing, |
| 4 | confirming that Petitioner has been released. Further, the Court **ORDERS** that |
| 5 | Respondents are enjoined from re-detaining Petitioner during the pendency of his removal |
| 6 | proceedings without prior leave of this Court. 28 U.S.C. § 1651. The TRO is in effect |
| 7 | until the Petition is decided. |
| 8 | Respondents may submit an optional supplemental response to the Petition no later |
| 9 | than **December 15, 2025**.[2] Petitioner may file an optional traverse no later than **December** |
| 10 | **22, 2025**. |
| 11 | **IT IS SO ORDERED.** |
| 12 | Dated: December 1, 2025 |

_____
Hon. Dana M. Sabraw
United States District Judge

---

[2] Respondents responded to both the Petition and Motion in their Opposition. (Opp'n 1).