UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOL DE LA ROSA GUARIN,<br><br>                    Petitioner,<br><br>v.<br><br>CHRISTOPHER J. LAROSE, et al.,<br><br>                    Respondents. | Case No.: 25-cv-03085-DMS-VET<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PETITION** |

On November 10, 2025, Petitioner filed a Petition for Writ of Habeas Corpus ("Petition") and a Motion for Temporary Restraining Order ("Motion"). (Pet., ECF No. 1; Mot., ECF No. 2). On December 1, 2025, this Court issued an Order granting in part and denying in part Petitioner's Motion ("TRO Order"). (ECF No. 9). Specifically, the Court granted Petitioner's request to be released from custody, but denied Petitioner's request to implement procedures before Respondents could effectuate a third-country removal. (*Id.* at 8). The Court must now rule on the Petition. Respondents filed a supplemental response to the Petition, stating that they "have no supplemental information at this time." (ECF No. 11). Petitioner submitted a Traverse, requesting that the Court grant the Petition, enjoin Respondents from re-detaining Petitioner without leave of this Court, and find Petitioner's current conditions of supervised release to be unreasonable. (Traverse, ECF

No. 12). For the following reasons, the Court grants in part and denies in part the Petition.

## I. BACKGROUND

Petitioner was born in Spain to a Christian, Roma family. (Pet. ¶ 20). Petitioner and his family eventually fled to Mexico due to religious persecution, as well as violence against Petitioner for being bisexual. (*Id.*). Petitioner obtained permanent residence in Mexico, working as an addiction counselor at a drug rehabilitation clinic. (*Id.* ¶¶ 20–21). One of Petitioner's clients learned of his Spanish passport and asked him to transport drugs internationally. (*Id.* ¶ 21). When Petitioner refused, he was kidnapped and beaten by members of the Sinaloa Cartel. (*Id.*; Mot. Ex. A ¶¶ 5–6). After Petitioner was let go, he spent weeks in the hospital and asked his half-brother, a U.S. citizen, to help him apply to enter the United States through the Visa Waiver Program ("VWP"). (Mot. Ex. A ¶¶ 6–7). While in the hospital, Petitioner learned of several break-ins to his home by his kidnappers. (*Id.* ¶ 8). After being released from the hospital, Petitioner immediately went to the U.S. border and arrived at the San Ysidro Port of Entry East Pedestrian Lane on July 9, 2024. (*Id.* ¶ 9; Pet. ¶ 22). Petitioner was arrested and detained by Immigration and Customs Enforcement ("ICE") at the Otay Mesa Detention Center. (Pet. ¶ 22). On November 11, 2024, Petitioner requested a custody redetermination, but the Immigration Judge ("IJ") declined jurisdiction due to Petitioner's status as a VWP applicant. (Pet. ¶ 24; Mot. Ex. B at 5–6); *see Matter of A-W-*, 25 I. & N. Dec. 45, 47 (holding that an IJ's jurisdiction over a VWP applicant is "expressly limited to a determination whether the applicant is eligible for asylum or withholding of removal"). On May 22, 2025, an IJ granted Petitioner Withholding of Removal from Spain and Mexico, which neither party appealed. (Pet. ¶ 25). On August 26, 2025, counsel for Petitioner contacted ICE to notify them that Petitioner had not received his ninety-day custody review by August 20, 2025, as required by 8 C.F.R. 241.4. (Mot. Ex. B at 15). Petitioner also had not received a thirty-day written notice as required, which would have indicated that a custody review was imminent. (*Id.*). Over the next five weeks, counsel for Petitioner repeatedly contacted ICE about the overdue custody review. (Pet. ¶¶ 26–29). Petitioner alleges that on October 3, 2025, ICE

officers approached him at the Otay Mesa Detention Center and pressured him to sign a backdated document indicating he received notice of an August custody review on June 9, 2025. (Pet. ¶ 30; Mot. Ex. B at 28–31). Petitioner, a Spanish-speaker, refused to sign the documents without interpretation or counsel. (Pet. ¶ 30; Mot. Ex. A ¶ 17). On October 6, 2025, Petitioner alleges that ICE officers again approached him with new documents which stated that he would receive a custody review on November 5, 2025, and Petitioner again refused to sign without counsel present. (Pet. ¶ 32; Mot. Ex. B at 32–33). On October 15, 2025, Petitioner alleges that ICE officers brought him new documents indicating a custody review had taken place and that there was a decision to continue detention, which Petitioner again refused to sign unless they contacted his attorney. (Pet. ¶¶ 33–34; Mot. Ex. B at 34–35). The decision purports to be based, in part, on documents submitted by Petitioner on June 24, 2025, despite statements from Petitioner and his counsel that they did not submit any documents on that date. (Pet. ¶¶ 34–35; Mot. Ex. B at 34–37). To Petitioner's knowledge, no custody review was held on November 5, 2025. (Pet. ¶ 36).

On November 10, 2025, Petitioner filed his Petition requesting (1) a writ of habeas corpus ordering Respondents to immediately release Petitioner from custody; (2) injunctive relief enjoining Respondents from unlawfully detaining Petitioner in the future; (3) an order enjoining Respondents from removing Petitioner to a third country without adequate notice and a meaningful opportunity to raise a fear-based claim seeking protection from such removal; (4) a declaration that Petitioner's detention violates the Immigration and Naturalization Act, the Due Process Clause of the Fifth Amendment, and the Administrative Procedure Act; (5) an award of reasonable attorney fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412; and (6) a grant of any further relief the Court deems just and proper. (Pet. 21).

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A petitioner prevails in his petition for writ of habeas corpus if he shows that his custody violates the Constitution or laws of the United

States.  *Id.* § 2241(c)(3).  The writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

### III. DISCUSSION

#### A. *Zadvydas* Claim

"[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days" (referred to as the "removal period"). 28 U.S.C. § 1231(a)(1)(A).  An alien must be detained during the 90-day removal period. *Id.* § 1231(a)(2).  After the removal period, an alien not yet removed may continue to be detained or released under supervision; however, detention beyond the removal period is limited to what is reasonably necessary to bring about the alien's removal. *Id.* § 1231(a)(6); *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001).  Section 1231 contains an implicit time limitation of six months, after which post-removal detention is no longer presumptively reasonable.  *Zadvydas*, 533 U.S. at 701.  The petitioner has the initial burden to provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," after which, the Government must respond with evidence sufficient to rebut this showing. *Id.* at 701.  If removal is not reasonably foreseeable, the petitioner's detention is no longer authorized by statute. *Id.* at 699–700.  "In that case, . . . the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances." *Id.* at 700.

In the TRO Order, the Court determined that Petitioner had been detained for more than six months post-removal order, triggering the *Zadvydas* burden-shifting scheme. (TRO Order 6–7).  The Court also found that Petitioner had received minimal communications regarding his detention status, including a late and procedurally incorrect custody review. (*Id.*; Pet. ¶¶ 34–35); *see* 8 C.F.R. 241.4(h)(2) (requiring thirty-day written notice be given to noncitizens so that they "may submit information in writing in support of [their] release").  The Court found that, based on Petitioner's allegations and information from Respondents, the Government did not have removal to a third country underway or an answer as to when Petitioner would be removed. (TRO Order 7).  As Respondents do

not have any additional information at this time, these facts remain true. (*See* ECF No. 11 at 2). The Court finds that Petitioner has sufficiently raised a "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Thus, Petitioner's detention is no longer authorized by statute and the writ is **GRANTED** as to this claim.[1]

### B. Third-Country Removal Claim

"A petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is the proper mechanism to challenge the legality of . . . detention pending removal. However, it is not the proper vehicle to bring claims that are speculative or otherwise not ripe for review." *Tran v. Bondi*, No. C25-01897-JLR, 2025 WL 3140462, at *4 (W.D. Wash. Nov. 10, 2025) (citations omitted). Here, Petitioner asks the Court to enjoin Respondents from removing Petitioner to a third country "without first giving Petitioner adequate notice and a meaningful opportunity to raise a fear-based claim and seek protection from removal to that country." (Pet. 21). The Court recognizes Petitioner's concerns about removal to a third country, where his life and freedom could be under threat because of his identity. (*See* Traverse 4–5). However, as this threat "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all," the claim is unripe. *Zabadi v. Holder*, 407 F. App'x 219, 221–22 (9th Cir. 2011) (quoting *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009). Since there is no evidence about what country would accept Petitioner, when such a removal would occur, or that the Government would ignore its constitutional requirements, the Court declines to impose any procedures at this time. *See A.A.M. v. Andrews*, No. 1:25-cv-01514-DC-DMC (HC), 2025 WL 3485219 (E.D. Cal. Dec. 4, 2025) (finding that due process requires a full and fair hearing before a neutral arbitrator before removing a noncitizen to a country not identified in the final removal order). Therefore, a writ on this basis is **DENIED**.

---

[1] In light of this determination, the Court declines to consider Petitioner's arguments that Respondents violated their procedural regulations.

### C. Re-Detention

In the TRO Order, the Court enjoined Respondents "from re-detaining Petitioner during the pendency of his removal proceedings without prior leave of this Court." (TRO Order 9) (citing 28 U.S.C. § 1651). Here too, the Court **ENJOINS** Respondents from re-detaining Petitioner during the pendency of his removal proceedings without complying with relevant regulations, stating the grounds for re-detention, and obtaining leave of this Court. *See* 8 C.F.R. §§ 241.4, 241.13; *Backcountry Against Dumps v. Fed. Aviation Admin.*, 77 F.4th 1260, 1267 (9th Cir. 2023) (A federal agency "is obliged to abide by the regulations it promulgates, including its own internal operating procedures. This is especially true where a prescribed procedure is intended to protect the interests of a party before the agency." (citation modified)).

### D. Conditions of Supervised Release

In the TRO Order, the Court ordered Respondents to release Petitioner "with reasonable conditions of supervised release." (TRO Order 9). Petitioner argues that Respondents have violated the Order by placing him under the Intensive Supervision Appearance Program which includes "24-hour GPS ankle monitoring, frequent reporting, and geographic restrictions." (Traverse 8–9). A party seeking to establish contempt of a court order must do so by clear and convincing evidence. *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). Here, Petitioner did not meet that burden. Accordingly, at this time, the Court declines to make any findings about the reasonableness of Petitioner's conditions of supervised release.

### IV.   CONCLUSION

Based on the foregoing, the Court (1) **GRANTS** the Petition on the *Zadvydas* claim; (2) **DENIES** Petitioner's request to implement additional procedures before Respondents can effectuate a third-country removal; (3) **ENJOINS** Respondents from re-detaining Petitioner during the pendency of his removal proceedings without prior leave of this Court; and (4) declines to make any findings as to the reasonableness of Petitioner's current conditions of supervision. The TRO issued on December 1, 2025, is hereby **DISSOLVED**.

**IT IS SO ORDERED.**

Dated: December 29, 2025

_____
Hon. Dana M. Sabraw
United States District Judge